**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| HILDA L. SOLIS[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1517 |
| | § | |
| UNIVERSAL PROJECT MANAGEMENT, | § | |
| INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Fluor Enterprises, Inc. ("Fluor") contracted with the federal government to provide housing and related remedial services to those affected by Hurricane Katrina. Fluor in turn contracted with Universal Project Management, Inc. ("UPM") to provide workers to perform the contract. In this suit, the Secretary alleges that UPM and Fluor violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, by failing to pay 154 individuals overtime when they worked more than forty hours per week between September 2005 and December 2006. The Secretary alleged that the defendants owe these individuals $1,813,662.53. Fluor asserted that the workers were all UPM employees and denied that it is liable as a joint employer.

The general statute of limitations for an FLSA claim is two years. *See* 29 U.S.C. § 255(a). In August 2007, Fluor and UPM entered into an agreement with the Secretary to toll the statute of limitations on the FLSA claims. The Secretary filed the complaint in this suit on May 21, 2008. Fluor has moved for partial summary judgment, arguing that all claims that arose before May 21,

---

[1]    The name of the current Secretary of Labor was automatically substituted under Rule 25(d) of the Federal Rules of Civil Procedure.

2006 are barred by limitations because the Secretary breached the tolling agreement. (Docket Entry No. 27). The Secretary responded, (Docket Entry No. 28), Fluor replied, (Docket Entry No. 29), and the Secretary filed a surreply, (Docket Entry No. 31). This court heard oral argument on Fluor's motion on May 1, 2009. (Docket Entry No. 32).

Based on a careful review of the motion, response, and replies, the record, the arguments of counsel, and the applicable law, this court denies Fluor's motion for partial summary judgment. The reasons are explained in detail below.

## I.     Background

In February 2007, the Department of Labor ("DOL") began investigating potential FLSA violations by UPM and Fluor in connection with the work on Fluor's Hurricane Katrina contract. In July 2007, DOL representatives met with Fluor and UPM to discuss the FLSA claims. On August 27, 2007, the Secretary, UPM, and Fluor entered into an "Agreement to Toll the Running of the Statute of Limitations." (Docket Entry No. 27, Ex. A-1) ("Tolling Agreement"). The defendants agreed to toll limitations in exchange for the Secretary's agreement to "withhold filing legal proceedings under the FLSA until notice of termination in the manner set forth in paragraph 4." (*Id.*). The purpose of the tolling period was to give the parties time to exchange and verify information about unpaid wages or any other cause of action under the FLSA asserted by the Secretary or the affected employees and "if appropriate, to negotiate with respect to such claims and/or causes of action." (*Id.*).

The parties agreed that the statute of limitations "shall be tolled with respect to any action under the FLSA" against UPM and Fluor "beginning 9/01/2005 (the effective tolling date) through and including 90 calendar days following the sending and transmission of a notice of termination

2

in the manner set forth in paragraph 4 (the termination date)." (*Id.*).  Paragraph 4 stated that any party "may terminate this agreement in the manner set forth herein and the statutes of limitations . . . shall remain tolled until 90 days after the notice has been sent by both regular mail and telefax in accordance with the terms of this Agreement." (*Id.*).  The Agreement stated that the "Secretary may notify" Fluor "of the Secretary's intent to terminate the agreement by sending written notice to Mr. Bob Jones, Senior Vice President, Operations, at the following address and telefax number: . . . ." (*Id.*).  "Notice to Mr. Bob Jones, Senior Vice President, Operations will constitute effective notice to Fluor." (*Id.*).

On October 4, 2007, DOL representatives met with counsel for UPM and Fluor to discuss the FLSA claims, exchange information, and negotiate toward settlement.  The claims were not resolved.  The DOL agreed to a two-week extension for Fluor to provide its "final" position on the FLSA claims.  After an additional two-week extension, Fluor told the DOL on November 6, 2007 that it would not pay any of the claimed backwages.  According to the Secretary, after November 2007 "Fluor continued to present information and its legal arguments for consideration" as to why it was not liable for backwages.  (Docket Entry No. 28, at 7).

On May 19, 2008, Fluor's general counsel e-mailed the Secretary's counsel, stating: "I have learned that DOL may have filed a complaint in this matter or may have contemplated doing so.  I was hoping to have a dialogue with you before that happens."  (Docket Entry No. 28, Ex. C).  The Secretary's counsel had opened a new civil case on the court's electronic filing system on May 15, 2008.  Although this case name and civil action number are on the CM/ECF system as of May 15, 2008, no complaint was filed on that date.  The Secretary asserts that the complaint was not filed until May 21, 2008 and that the May 15 date "is an artifact of the e-filing system and simply reflects

3

the date that the Secretary's counsel opened his new e-filing account with the [court] and in doing so included optional information concerning the unfiled action." (Docket Entry No. 31, at 2). At the motion hearing, Fluor argued that this explanation was disingenuous because the Secretary's counsel had opened his e-filing account in January 2008. Fluor submitted a "Courthouse News Service" notice that it received on May 16, 2008, which included this case style and civil action number among the style and number for other newly filed cases. The notice of newly filed cases on May 15, 2008 included "Elaine Chao v. Universal Project Management Inc.; Fluor Enterprises Inc. 5/15/2008 H-08-01517 (Houston)." (Docket Entry No. 29, Ex. A). The summary of the case stated: "Fair Labor Standards Act violation in which the defendants failed to pay the plaintiff overtime rates for hours she worked in excess of 40 per week." (*Id.*). Fluor asserts that the "Courthouse News" notice alerted its general counsel to the fact that this case had been filed, prompting the May 19, 2008 email. (Docket Entry No. 29, at 6). Fluor asserts that the Secretary's breach of the notice obligation in the Tolling Agreement excuses Fluor from its obligation to toll limitations and that all claims arising before May 21, 2006 are barred.

## II.    The Legal Standard for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of

4

evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted).

In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (citation omitted). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.    Analysis

Fluor argues that the Secretary breached the Tolling Agreement because she failed to provide the required notice of intent to terminate the Agreement before she filed this suit. Neither UPM's President nor Fluor's Vice President of Operations received written notice that the Secretary would terminate the Agreement. Fluor contends that the Secretary cannot rely on the May 19, 2008 e-mail as evidence that Fluor received actual, effective notice of the Secretary's intent to terminate the Tolling Agreement. Fluor's general counsel did not receive notice of the termination of the Agreement from the Secretary, but through the Courthouse News Service's announcement that the Secretary had filed this lawsuit. Fluor argues that it was "the actual filing of the lawsuit against Fluor in breach of the Tolling Agreement that alerted Fluor to the lawsuit, not any notice of any kind by the Secretary." (Docket Entry No. 29, at 6). Fluor argues that the breach was material because the lack of notice that the Agreement was terminated deprived Fluor of a final opportunity to "discuss the decision with the Secretary and to engage in final negotiations before the suit was filed." (Docket Entry No. 29, at 10). Fluor argues that because the Secretary has breached her only obligation under the Agreement – giving written notice of its termination – it is excused from its obligation to toll the statute of limitations.

The Secretary argues that no breach occurred because Fluor received actual notice of the lawsuit before the complaint was filed. According to the Secretary, Fluor's May 19, 2008 email shows that it received notice of the Secretary's intent to terminate the Tolling Agreement before the complaint was filed on May 21, 2008. The Secretary argues that, even assuming she breached the

6

Agreement by failing to provide notice before the lawsuit was filed, any breach was immaterial because Fluor was not deprived of any expected contractual benefit.  The Secretary withheld filing suit for "almost a year,"  (Docket Entry No. 28, at 12), giving Fluor ample opportunity to gather evidence and to persuade the Secretary to not file suit.

A contract is breached when a party fails or refuses to perform an act that it expressly promised to do.  *Methodist Hosps. v. Corporate Communicators, Inc*., 806 S.W.2d 879, 882 (Tex. App.—Dallas 1991, writ denied).  Whether a party has breached a contract is a question of law for the court.  *See BACM 2001-1 San Felipe Rd. Ltd. P'ship v. Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 146 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Meek v. Bishop Peterson & Sharp*, *P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied).  In deciding whether the contract has been breached, the court must enforce the language in the contract as it is written by "looking at the objective intent as manifested by the language used, rather than interpreting it by attempting to divine the subjective intent of the parties." *Sulzer Carbomedics*, *Inc. v. Oregon Cardio-Devices*, *Inc.*, 257 F.3d 449, 457 (5th Cir. 2001) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996)).

Whether a party's breach of contract is material so as to excuse the other party's obligation to perform is generally a question of fact.  *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983).  The materiality of a breach can, however, present questions for the court to resolve as a matter of law.  *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 198–200 (Tex. 2004) (per curiam) (holding that material breach occurred as matter of law); *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994) (holding that breach was not material as a matter of law).

The undisputed facts show that the Secretary breached the Tolling Agreement by failing to

provide notice as required by that Agreement.  The Agreement unambiguously states that the Secretary agreed to withhold filing suit "until notice of termination *in the manner set forth in paragraph 4*."  (Docket Entry No. 27, Ex. A-1) (emphasis added).  Paragraph 4 states that the Secretary may terminate the Agreement "in the manner set forth herein" and that the statute of limitations would "remain tolled until 90 days after the notice has been sent by both regular mail and telefax in accordance with the terms of this Agreement."  (*Id.*).  The "manner set forth" in the Agreement for giving notice of termination to Fluor was by letter and telefax to Bob Jones, Fluor's Senior Vice President of Operations.  (*See* Docket Entry No. 27, Ex. A-1) (The "Secretary may notify" Fluor "of the Secretary's intent to terminate the agreement by sending written notice to Mr. Bob Jones, Senior Vice President, Operations, at the following address and telefax number: . . . .").  It is undisputed that the Secretary never sent notice, written or otherwise, to Bob Jones.  The fact that paragraph 4 uses the term "may" to describe the Secretary's notice obligation does not mean that notice is optional or that methods of notice other than letter or telefax to Jones fulfill the Secretary's contractual duty.  A court must "construe the terms of the contract as a whole and consider all of its terms, not in isolation, but within the context of the contract."  *SMI Realty Mgmt. Corp. v. Underwriters at Lloyd's*, *London*, 179 S.W.3d 619, 624 (Tex. App.–Houston [1st Dist.] 2005, pet. denied).  The Tolling Agreement, considered as a whole, clearly provides that the Secretary's obligation to withhold filing suit can only be terminated by giving notice in the manner set forth in the Agreement, which required written notice of termination by mail and fax to Bob Jones at the stated address.

The Secretary's argument that no breach occurred because Fluor received notice before May 21, 2008 that a lawsuit either had been or would be filed is unpersuasive.  It is undisputed that the

Secretary did not provide written notice to Fluor in accordance with the Tolling Agreement.  The fact that Fluor received notice by other means does not save the Secretary from the clear breach of her obligation to provide written notice of her intent to terminate the Agreement.  Moreover, Fluor did not receive notice of the pending lawsuit directly from the Secretary herself by a method other than letter or fax, but indirectly through the Courthouse News Service.  The lawsuit became a public record when the Secretary initiated the litigation by opening a new civil action number with the court's electronic filing system.  Whether the suit was commenced when the civil action number was assigned on May 15 or when the complaint itself was filed on May 21, the Secretary did not provide written notice to Fluor that the Agreement was terminated, as the Agreement required.  The Secretary's failure to provide written notice by letter and fax is a breach of the Agreement.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co.*, 134 S.W.3d at 198–200.  In determining whether a party has materially breached a contract so as to discharge the other party's obligation to perform his contractual duties, Texas courts follow the *Restatement (Second) of Contracts*.[2]  *See id.*  A breach is material if the

---

[2]     The *Restatement* identifies five circumstances significant to determining whether a party's failure to perform is material:

> (a)     the extent to which the injured party will be deprived of the benefit which he reasonably expected;

> (b)     the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

> (c)     the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

> (d)     the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances

injured party does not receive the substantial benefit of the bargain.  *See Hernandez*, 875 S.W.2d at 692; *Lazy M Ranch Ltd. v. TXI Operations*, 978 S.W.2d 678 (Tex. App.—Austin 1998, pet. denied).  "The less the non-breaching party is deprived of the expected benefit, the less material the breach."  *Hernandez*, 875 S.W.2d at 693.

        In *Mustang Pipeline Co.*, the court held that, as a matter of law, the defendant's breach of the contract was material, discharging the plaintiff from its contractual obligations.  134 S.W.3d at 199.  The parties' contract called for the defendant to construct the northern 100 miles of a 200-mile pipeline by a certain date.  *Id.* at 196.  The contract stated that "all time limits stated in the Contract are of the essence to the Contract."  *Id.* at 199.  Nearly 60 days into the 90-day construction period, after having completed only 15 miles of pipeline, the defendant suspended operations, blaming excessive rain for the slow progress and the halt of construction.  *Id.* at 197.  The plaintiff disputed that the rain prevented the defendant from completing the project on time.  With one month remaining before the deadline, the defendant reaffirmed that it was not ready to resume work on the pipeline.  *Id.*  The plaintiff then contracted with another company to finish the remaining 85 miles of the project.  The court held that time was a material element of the contract, noting that it was emphasized during the contract negotiations and in the contract language.  *Id.* at 199.  The defendant had made minimal progress on construction and had not provided a revised plan in response to the plaintiff's suggestions on how to expedite construction.  At the time the plaintiff terminated the

---

                    including any reasonable assurances; and

        (e)     the extent to which the behavior of the party failing to perform or
                to offer to perform comports with standards of good faith and fair
                dealing.

RESTATEMENT (SECOND) OF CONTRACTS § 241.

contract, it would have been nearly impossible for the defendant to cure its breach and complete the construction on time.  The plaintiff was deprived of the expected benefit under the contract, a pipeline completed on schedule.  The court held that, based on these facts, the defendant's breach was material and discharged the plaintiff's contractual duties.  *Id.*; *see also Hooker v. Nguyen*, 2005 WL 2675018, at *9 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (finding material breach where plaintiff was "deprived of a benefit that he reasonably expected, that is, an on-time project finished by a certain day that produced a working and workable salon with no construction defects"); *Lazy M Ranch*, 978 S.W.2d at 681–82 (finding a material breach when a mining company agreed in its contract not to explore outside restricted area on ranch land and the company's personnel repeatedly trespassed and conducted geological testing on parts of the ranch outside the restricted area, allowing them to obtain information to which only the ranch owner had a right).

By contrast, in *Coppersmith v. Onyx One Partnership*, *Ltd.*, 1997 WL 549348, at *4 (Tex. App.—Houston [1st Dist.] 1997, no writ), the court found no material breach.  That case involved a commercial lease.  Approximately halfway into her two-year lease, the tenant moved most of the contents of her office to another building.  She continued to pay rent but sought a new tenant to sublease the space.  With four months left on the lease, "little, if anything remained" in her office space.  Two months before the lease was to expire, the tenant returned to the office space and discovered plants and furniture in her former office.  The landlord informed her that it was using the "vacated" space as storage for another tenant.  The items were removed at the tenant's request, but the tenant refused to pay rent.  The court observed that although the landlord had used the vacated portion of the tenants's office, it did not remove the tenant's belongings.  The court held that "to the limited extent [the tenant] continued to derive a benefit from the [] office, that benefit continued

11

throughout [the landlord's] use of the space." *Id.*  The landlord did not materially breach the lease because the tenant was not in any different position than she would have been had the landlord not stored another tenant's belongings in her office.  *Id.*

     *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691 (Tex. 1994), is similar.  In that case, the insurer denied the insureds' claim on an uninsured/underinsured motorist policy for failure to obtain written consent before settling with the tortfeasor.  *Id.* at 692.  The policy excluded coverage for injury or damage for which the insured, without the insurer's written consent, entered into a settlement with the tortfeasor.  *Id.*  The issue before the Texas Supreme Court was whether an insurer could deny such a claim absent a showing of prejudice to the insurer.  *Id.*  The court recognized that in certain circumstances, an insurer may be prejudiced by the insured's failure to obtain consent, such as when the settlement extinguishes a valuable subrogation right.  *Id.* at 693.  But the court held that the insurer is "not deprived of the contract's expected benefit" when "any extinguished subrogation right has no value."  *Id.*  The plaintiffs' failure to obtain written consent before settling the claim did not materially breach the insurance contract because the insurer had "not incurred any financial losses . . . with regard to its subrogation rights" as a result.  *Id.* at 693–94.  Because the insurer "remain[ed] in the same position it would have occupied had the [insureds] complied with the settlement-without-consent clause," the breach was not material and the insurer was not excused from its obligation to perform under the contract.  *Id.* at 694.

     The court in *Hanson Production Co. v. Americas Ins. Co.*, 108 F.3d 627, 628 (5th Cir. 1997), followed *Hernandez* and held that a breach of an insurance agreement requiring notice of a claim is not material if the insurer cannot show prejudice.  In that case, the policy at issue required the insured to "immediately" notify the insurer of a claim or a suit against the insured.  *Id.*  The insured

was sued by a third party for actions that would be covered by its comprehensive general liability policy but did not notify the insurer of the suit until over two years after the complaint was filed. *Id.* The insurer denied coverage for the underlying suit and the insured sued for breach of contract. *Id.* The court held that the insurer was required to prove prejudice to deny coverage on the basis of the failure to give notice of a claim or suit. *Id.* at 631. The reasoning of *Hernandez* applied with "equal if not greater force" to a notice clause because "the failure to give notice of a claim poses a smaller risk of prejudice than failure to obtain consent to a settlement." *Id.* The court held that the principle "recognized in *Hernandez* – that a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not – is equally applicable to notice cases." *Id.*; *see also PAJ, Inc. v. Hanover Insurance Co.*, 243 S.W.3d 630, 636–37 (Tex. 2008) (finding no material breach when an insured's failure to give timely notice of a lawsuit did not prejudice the insurer).

And in *Int'l Ins. Co. v. RSR Corp.*, 2001 WL 1295482, at *7 (N.D. Tex. Oct. 11, 2001), *aff'd*, 148 Fed. App'x 226 (5th Cir. 2005), the court held that an insured's failure to obtain consent to enter a tolling agreement was not a material breach because the insurer failed to show prejudice from the failure to consent. The insurance agreement stated that the insured "shall not, without the consent in writing of the Insurers, make any admission or negotiate any offer, promise or payment in connection with any incident or claim." *Id.* at *5. The insured entered into a tolling agreement that removed its statute of limitations defense in a suit against the insured that would be covered by the policy. The insurer sued for a declaration of noncoverage based on the insured's breach. The court held that the insurance policy unambiguously required the insurer's consent before the insured entered into a tolling agreement. *Id.* But because the insurer failed to show any prejudice as a result

13

of the insured's failure to obtain consent, the breach was not material.  The court held that the insurer could not rely on the costs of litigating as evidence of prejudice because "then any breach could be rendered material simply by suing on it." *Id.* at *7.  The court found no material breach because the insurer "remained in the same position it would have occupied had the insureds complied with the consent provision." *Id.*

       In the present case, the Secretary's failure to provide notice of termination as required in the Tolling Agreement breached the Agreement, but not materially.  The lack of notice did not deprive Fluor of the benefit it expected under the Agreement, to give the parties "time to exchange and verify information" with respect to the FLSA claims "and if appropriate, to negotiate" those claims. (Docket Entry No. 27, Ex. A-1).  The record shows that Fluor had multiple opportunities to attempt to resolve the FLSA claims during the tolling period.  Fluor presented arguments and evidence to the DOL as to why it was not liable for unpaid overtime wages.  After these negotiations were unsuccessful in resolving the claims, and Fluor confirmed to the DOL on November 6, 2007 that it would not pay any of the claimed backwages, the DOL reiterated to Fluor that the matter would be referred for litigation.  Fluor continued to send information and arguments to the DOL for consideration, up until the time this suit was filed.  Fluor was not deprived of the opportunity to negotiate the FLSA claims in exchange for its agreement to toll the statute of limitations.  Like the tenant in *Coppersmith*, and the insurers in *Hernandez*, *Hanson Production Co.*, and *RSR Corp.*, Fluor remained in the same position it would have occupied had the Secretary complied with the written notice obligation in the Tolling Agreement.

       The Tolling Agreement does not require the Secretary to delay beginning litigation for any period after notice of termination.  The Agreement merely states that the tolling period will extend

"90 days after the notice has been sent by both regular mail and telefax in accordance with the terms of this Agreement."  (Docket Entry No. 27, Ex. A-1).  Under the Agreement's terms, the Secretary was free to file a lawsuit at any time during that 90-day period, including immediately after she provided written notice to Fluor of her intent to terminate the Agreement.  Fluor's argument that it lost the expected benefit of having one last chance to negotiate the FLSA claims with the Secretary after notice was provided but before suit was filed is not supported by the Agreement terms.

Even assuming that Fluor's expectation for "one last chance" was reasonable or part of the Agreement, the record shows that Fluor did in fact have an opportunity to attempt final negotiations before the complaint was actually filed on May 21, 2008.  On May 19, 2008, after learning that the Secretary had either filed or intended to file a lawsuit, Fluor took the opportunity once more to argue "that the Secretary should not file a complaint seeking backwages."  (Docket Entry No. 31, at 2).  Although litigation had been initiated by the opening of a new civil case, the complaint had not yet been filed and Fluor was able to discuss a potential resolution of the FLSA claims before May 21, 2008.  Fluor received some notice of the Secretary's intent to terminate the Agreement and file suit.  This supports the conclusion that the breach was immaterial.  *See Dunkin' Donuts*, *Inc. v. Towns Family*, *Inc.*, No. 95 C 3666, 1995 WL 591454 at *4 (N.D. Ill. Oct. 4, 1995) ("A contracting party's technical, non-compliance with the precise requirements of a notice provision does not preclude that party from enforcing its rights under the contract if the intended recipient receives actual notice, because the non-compliance is not a material breach of the contract by the party providing notice."); *see also Hickox v. Bell*, 552 N.E.2d 1133, 1144 (Ill. App. 5 Dist. 1990) (concluding that a failure to deliver notice is not a material breach).  Fluor had the opportunity to attempt to negotiate the FLSA claims before the complaint was actually filed.  Fluor was not prejudiced by the Secretary's breach.

15

*Compare Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 295-96 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that insurer had produced no evidence that "late notice" prevented it from investigating suit or assuming control of defense and that insurer had failed to prove actual prejudice, in part, because insurer "had the option to participate in settlement negotiations" and could have assumed control of entire defense); *with Motiva Enters., LLC v. St. Paul Fire & Marine Ins., Co.*, 445 F.3d 381, 386–87 (5th Cir. 2006) (holding that insurer suffered prejudice as matter of law by insured's breach of consent-to-settle provision when insurer was not consulted about settlement and insurer had no opportunity to participate in or consent to settlement).

The record does not provide a basis to conclude that Fluor was deprived of any expected contractual benefit as a result of the Secretary's failure to provide written notice of her intent to terminate the Agreement.  Fluor was not deprived of its opportunity to negotiate the FLSA claims. Fluor had the opportunity to negotiate with the Secretary during the tolling period as well as after this lawsuit was initiated but before the complaint was actually filed.  The Secretary's failure to give written notice as required by the Agreement was not a material breach and does not discharge Fluor of its contractual obligation to toll the statute of limitations.

IV.    **Conclusion**

Fluor's motion for partial summary judgment is denied.

SIGNED on May 8, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge