IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HILDA L. SOLIS,[1] *Secretary of Labor*, § | |
| *United States Department of Labor*, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-1517 |
| § | |
| UNIVERSAL PROJECT MANAGEMENT, § | |
| INC., *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Fluor Enterprises, Inc. ("Fluor") contracted with the federal government to provide housing and other services after Hurricane Katrina. Fluor in turn contracted with Universal Project Management, Inc. ("UPM") to provide workers to perform the contract. In this suit, the Secretary of the Department of Labor alleges that UPM and Fluor violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay 154 of those workers overtime for the weeks between September 2005 and December 2006 in which the workers put in more than forty hours. The Secretary alleges that the defendants owe these workers $1,813,662.53 in unpaid overtime. Fluor denies liability for the unpaid overtime on the grounds that the workers were all UPM employees and Fluor was not a joint employer.

Fluor filed a cross-claim against UPM and a third-party complaint against Tom Crum, UPM's president, and V.L. Kimbrell, UPM's vice-president. Crum and Kimbrell have moved for

---

[1] The name of the current Secretary of Labor was automatically substituted under Rule 25(d) of the Federal Rules of Civil Procedure.

summary judgment, arguing that they are not "employers" under the FLSA. (Docket Entry No. 39). Fluor responded. (Docket Entry No. 43). Based on a careful review of the pleadings; the motion and response; and the applicable law, this court denies the motion for summary judgment. The reasons are explained below.

**I.      Background**

In the third-party complaint against Crum and Kimbrell, Fluor alleged that as officers of UPM,[2] Crum and Kimbrell are jointly and severally liable as "employers" under the FLSA. (Docket Entry No. 13). Fluor also alleged that Crum and Kimbrell are liable to Fluor for indemnification and contribution. (*Id.*). Crum and Kimbrell moved for summary judgment on Fluor's third-party claims, arguing that they cannot be liable because they were merely officers of UPM and do not meet the FLSA definition of "employer." (Docket Entry No. 39). Crum and Kimbrell asserted that the allegations are insufficient to hold them liable as corporate officers for actions they took on the corporation's behalf. (*Id.* at 3). Crum and Kimbrell argued that such an application of the FLSA would be "dangerous" because it could open the door to impose liability on "tens, maybe hundreds, of additional third party defendants," including officers of Fluor. (*Id.* at 4).

Fluor responded by arguing that the FLSA's plain language contemplates that corporate officers can be held liable for unpaid overtime and that the Fifth Circuit has upheld FLSA liability against individual officers who were acting in the interest of the corporation in relation to its employees. (Docket Entry No. 43 at 5–6). Fluor argued that the FLSA does not require facts sufficient to pierce the corporate veil and that Crum and Kimbrell have not identified or presented

---

[2] Crum was the president of UPM from April 2001 to December 2007. (Docket Entry No. 39, Ex. A at 1). During the same period, Kimbrell served as UPM's vice-president. (*Id.*, Ex. B at 1).

summary judgment evidence showing that they lacked the necessary responsibility or control for FLSA liability. (*Id.*). Alternatively, Fluor asserted that a fact issue exists as to whether Crum and Kimbrell were "employers" under the FLSA. (*Id.* at 7–8).

## II. The Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted), *petition for cert. filed*, 77 U.S.L.W. 3657 (U.S. May 22, 2009). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.     The FLSA's Definition of "Employer"

Fluor's third-party complaint alleged that Crum and Kimbrell are jointly and severally liable as the plaintiffs' "employers." (Docket Entry No. 13 at 3). Under the FLSA, an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). A "'[p]erson' means an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." *Id.* § 203(a). Whether a person is an employer under the FLSA is a question of law, although "subsidiary findings are of fact." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985).[3] The

---

[3] The *Beliz* court acknowledged some confusion over this standard in prior Fifth Circuit cases but ultimately decided that "the weight of [the Fifth Circuit's] decisions and the weight of authority in other circuits support the characterization as one of law, while, of course, subsidiary findings are of fact." *Beliz*, 765 F.2d at 1327 (footnote omitted). Subsequent cases in the Fifth Circuit have reviewed a district court's conclusion that an individual was an employer as a question of law. *See Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) ("We review the district court's ultimate conclusion that [the defendant] is an "employer" *de novo* and review the court's subsidiary findings for clear error."). Recent cases in this district have cited both standards. *Compare Prince v. MND Hospitality, Inc.*, No. H-08-2617, 2009 WL 2170042, at *5 (S.D. Tex.

definition of "employer" under the FLSA is "expansive," extending to liability for persons with "managerial responsibilities" and "substantial control of the terms and conditions of the [employee's] work." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).

Analyzing whether a person is an "employer" under the FLSA "must focus upon the totality of the circumstances, underscoring the economic realities of the [employees'] employment." *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983). "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Grim Hotel Co.*, 747 F.2d at 972 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)); *see Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 226 (5th Cir. 1991) ("If an individual with managerial responsibilities is deemed an employer under the FLSA, the individual may be jointly and severally liable for damages resulting from the failure to comply with the FLSA."), *modified on other grounds*, 37 F.3d 1068 (5th Cir. 1993); *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (summary calendar) ("An officer of a corporation may . . . be restrained along with a corporate employer."). A corporate officer need not have an ownership interest in the company for FLSA liability. *See Osborn v. Computer Scis. Corp.*, No. A-04-CA-158-LY, 2005 WL 5878602, at *3 (W.D. Tex. Sept. 23, 2005) (citing *Sabine Irrigation Co.*, 695 F.2d at 195, and *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993)). Instead, a court must

---

July 20, 2009) ("Whether a party is an 'employer' is a question of law." (citing *Circle C. Invs., Inc.*, 998 F.2d at 329)), *with Tullous v. Tex. Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 820 (S.D. Tex. 2008) ("Whether a party is an employer or joint employer for purposes of the [FLSA] is essentially a question of fact[.]" (alteration in original) (citing *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir.1983))).

determine whether an individual officer, who lacks "a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Circle C. Invs., Inc.*, 998 F.2d at 329 (quoting *Sabine Irrigation Co.*, 695 F.2d at 194–95).

### III. The Evidence in the Summary Judgment Record

Crum and Kimbrell submitted separate declarations. (Docket Entry No. 39, Exs. A, B). Crum stated that he was the president of UPM from April 2001 until December 2007. (*Id.*, Ex. A at 1). Kimbrell was the vice president of UPM from April 2001 to December 2007. (*Id.*, Ex. B at 1). Crum and Kimbrell negotiated the contract with Fluor; the "interaction, correspondence, contacts and negotiations with Fluor were in [their] capacity as [] representative[s] of UPM and on behalf of UPM." (*Id.*, Exs. A, B at 2). Both Crum and Kimbrell stated that they did not personally employ the claimants, personally enter into contracts with them, or personally pay their wages. (*Id.*). All "interaction, correspondence, contacts and negotiations with any of said claimants was in [their] capacity as [] representative[s] of UPM and on behalf of UPM." (*Id.*).

Fluor submitted excerpts from Kimbrell's deposition. (Docket Entry No. 43, Ex. 1). The deposition testimony reflected that: (1) Kimbrell held an ownership interest in UPM over the period of the Fluor contract, as much as 31% of the company, though Kimbrell could not recall the amount for sure, (*id.* at 12); (2) Crum was the CEO of UPM during the Fluor contract, (*id.* at 13); (3) Kimbrell reported to Crum over the period of the Fluor contract, (*id.* at 17); (4) some UPM employees and consultants reported to Crum and Kimbrell, (*id.* 17–18); (5) Kimbrell reported to Crum on matters relating to the Fluor contract, (*id.* at 19); (6) Crum was responsible for the overall execution of UPM's business, (*id.* at 20); (7) Crum was not involved in the day-to-day work on the

6

Fluor contract, (*id.*); (8) Kimbrell was involved in negotiating with Fluor in August 2005, (*id.* at 31, 35); (9) at the time of the contract negotiations, Fluor did not know what hours the UPM-supplied workers would be working, (*id.* at 46); (10) UPM revised its bid for the project using a "worst-case scenario" assumption that workers would work 84-hour weeks, (*id.* at 47); (11) Fluor or FEMA assigned UPM workers to different groups, (*id.* at 55); (12) Kimbrell discussed with the UPM project operations manager that UPM was exposed to "labor issues for the payment of time-and-a-half overtime" for the FEMA-related assignments, (*id.* at 55); (13) Kimbrell discussed an "overtime issue" with Crum and a representative at Fluor, (*id.* at 81–82); (14) Kimbrell and Crum made occasional visits to the Fluor work site, (*id.* at 106); (15) Kimbrell discussed overtime with UPM personnel, (*id.* at 106–07); and (16) Kimbrell and Crum signed "task" orders on the Fluor contract, (*id.* at 161–65). Fluor also attached two task orders, one signed by Kimbrell and one signed by Crum, each reflecting an estimated 84-hour work week calculated at a single hourly rate. (*Id.*, Ex. 2).

**IV.    Analysis**

To the extent Crum and Kimbrell argue that an individual corporate officer cannot be held liable under the FLSA for actions taken on behalf of the corporation and in a corporate capacity, their argument is unpersuasive. Many cases hold corporate officers individually liable under the FLSA for such actions. For example, in *Donovan v. Grim Hotel Co.*, the Fifth Circuit reviewed an order enjoining five hotel corporations and their president from violating the overtime requirements of the FLSA. 747 F.2d 966, 971 (5th Cir. 1984). One of the appellate arguments was that the president was not subject to liability under the FLSA and could not be enjoined "personally and individually." *Id.* The district court had found that the president:

7

began and controlled the hotel corporations. He has held their purse-strings and guided their policies. It was only he who could authorize compliance with the Fair Labor Standards Act. He personally selected the manager of every hotel. He traveled to Texas to inspect the hotels and to solve major problems. The hotels were part of the [president's] family business. In short, the hotels, speaking pragmatically, were [the president's] and functioned for the profit of his family. . . . [He] was the 'top man.'

*Id.* at 972 (footnote omitted). The appellate court affirmed, stating that it could not "easily imagine firmer proof of [the president's] 'employer' status." *Id.* at 972 n.7. In another case involving the same individual defendant and another company for which he served as president and investor, the court upheld a judgment that the individual was an employer liable for overtime compensation with the corporate defendant. *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 195 (5th Cir. 1983). The individual asserted that he was a "nominal president" of the corporation and had only invested to "stave off bankruptcy." *Id*. at 194. The appellate court held that looking at the "economic realities," the district court had properly held that the individual was liable as an employer because he had:

exercised pervasive control over the business and financial affairs of [the company]. The evidence is clear that [the president] maintained continuous contact with his Tulsa office and indirectly controlled many matters traditionally handled by an employer in relation to an employee (such as payroll, insurance, and income tax matters). In addition, the evidence is clear that [the president's] financial gymnastics directly affected [the company's] employees by making it possible for [the company] to meet its payroll and keep its employees supplied with the equipment and materials necessary to perform their jobs.

(*Id*. at 195). Many other cases impose liability on corporate officers as an FLSA "employer." *See Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) ("Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." (quotation omitted)); *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001) ("[A] supervisor who uses his authority over the employees whom he supervises to violate their rights under the FLSA is [individually] liable for the violation."); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668,

8

678–79 (1st Cir. 1998) (finding that supervisory authority was not sufficient for individual liability under the FLSA; rather the individual defendant must have control over the work situation coupled with personal responsibility for the decision that violated the FLSA); *U.S. Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995) (finding an individual defendant liable under the FLSA because he had power over, among other things, hiring, firing, rates of pay, schedule, and payroll); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) ("This court has held that the FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." (quotation omitted)); *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 589 (9th Cir. 1993) (Fletcher, J., dissenting) ("There is no question that an individual can be personally liable as an employer under the FLSA; adverse employment actions attributable to individuals as a consequence of their authority over employment decisions can lead to individual liability where those actions violate the FLSA."); *Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 226 (5th Cir. 1991) (holding that an individual sheriff could be held an "employer" under the FLSA because the sheriff "clearly falls within the class of managerial personnel considered employers by the FLSA" and could exercise operational control under Mississippi law, though the district court did not make a finding to that effect), *modified on other grounds*, 37 F.3d 1068 (5th Cir. 1993); *Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989) (finding an individual defendant with power to hire and direct employees was an "employer" under the FLSA); *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530–31 (5th Cir. 1982) (upholding FLSA liability of an individual, even though he did not direct the day-to-day management of the corporate defendant because the individual's "considerable investment" in the

9

company gave him "ultimate, if latent, authority over its affairs," and he exercised authority by firing an employee, reprimanding others, and providing some direct supervision of employees); *Dole v. Haulaway Inc.*, 723 F. Supp. 274, 286–87 (D.N.J. 1989) ("A corporate officer with operational control is an 'employer,' along with the corporation, jointly and severally liable under the [FLSA] for unpaid wages. Further, any such corporate officer is liable in his individual, not representative, capacity." (citation omitted)), *aff'd mem.*, 914 F.2d 242 (3d Cir. 1990).

Many district court cases in the Fifth Circuit are consistent. *See, e.g.*, *Osborn v. Computer Scis. Corp.*, No. A-04-CA-158-LY, 2005 WL 5878602, at *2 (W.D. Tex. Sept. 23, 2005) (holding that a fact issue precluded summary judgment on an individual supervisor's status as an employer under the FLSA because the record showed that the supervisor evaluated the plaintiff's work, participated in decisions to change the plaintiff's work assignments, decided to terminate the plaintiff's employment, and informed the plaintiff of her termination); *Alba v. Loncar*, 3:03-CV-1295-M-(BH), 2004 WL 1144052, at *6–8 (N.D. Tex. May 20, 2004) (holding that evidence produced showing that a chairman of a company who gave employees specific instructions, ran employee meetings, had control over hiring and firing, was characterized as the "boss" of the sole shareholder and CEO, directed working days and lunches, and had final say over employee compensation was sufficient, if later found to be true, to compel the legal conclusion that he was an "employer" under the FLSA); *Chao v. Cities Market, Inc.*, No. Civ. A. 01-3592, 2002 WL 31260178, at *2 (E.D. La. Oct. 8, 2002) (holding that a fact issue precluded summary judgment in favor of an individual defendant who submitted an affidavit stating that he did not actively manage or supervise the company's business affairs and did not participate in day-to-day operations, but other evidence indicated that the defendant was the president and sole owner of the corporation, the

only officer who could control operations and set policy, and the only officer involved in running the business and likely to reap financial benefit from the company); *Barfield v. Madison County, Mississippi*, 984 F. Supp. 491, 497 (S.D. Miss. 1997) (relying on *Lee v. Coahoma County, Mississippi*, 937 F.2d 220 (5th Cir. 1991), to hold that a sheriff in his individual capacity was an employer under the FLSA), *abrogated on other grounds by Washington v. Fred's Stores of Tenn., Inc.*, 427 F. Supp. 2d 725, 729 n.3 (S.D. Miss. 2006); *Golizio v. Antonine Holding, Inc.*, No. 96-3142, 1997 WL 47781, at *5 (E.D. La. Feb. 5, 1997) (holding that the plaintiff was an employer under the FLSA because he signed over 1,000 corporate checks, was in charge of the restaurant's daily operations, had the potential to share in profits, had the power to enter into contracts on the restaurant's behalf, and had a stock repurchase agreement). *Cf. Geller v. Univ. of Miss.*, No. 300CV52DA, 2001 WL 1079006, at *2 (N.D. Miss. July 9, 2001) (holding that a university's department dean who was the plaintiff's former supervisor was not an employer where the evidence showed that "all important final employment decisions, including those regarding the Plaintiff's pay, came from [the defendant's] superiors"); *Mato v. Baldauf*, No. A 98 CA 825 SS, 1999 WL 1338367 (W.D. Tex. Dec. 16, 1999) (granting summary judgment in favor of a defendant in his individual capacity where the plaintiff and the defendant did not work for the same employer, the defendant did not dominate the work situation of employees, the defendant did not give employees direction or instruction, and the defendant did not have the power to hire or fire employees at the plaintiff's employer, although the defendant did approve employee vacation leave).

Under the case law, the argument that Crum and Kimbrell must have an ownership interest in UPM to be held personally liable is without merit. In *Reich v. Circle C. Investments, Inc.*, the Fifth Circuit affirmed a district court ruling that the husband of the president and owner of a

11

nightclub was an "employer" under the FLSA. 998 F.2d 324, 329 (5th Cir. 1993). The husband was under a "consulting" agreement that purported to "exclude personnel matters from his responsibilities," had no ownership interest in the underlying company, and did not control the nightclub's day-to-day operations. *Id.* In holding that the district court did not err in finding "employer" status under the FLSA, the Fifth Circuit noted that this individual "exercised control over the work situation"; was the "driving force" behind the company; hired the dancers; was identified by employees as their supervisor and gave instructions to the employees; signed payroll checks; spoke for the company during the Department of Labor's investigation of possible FLSA violations; and drafted an inter-office memorandum about rule infractions. *Id.*

Under the case law, the argument Crum and Kimbrell raise that they cannot be held liable in their individual capacity unless Fluor can show that one of the Texas common-law exceptions to the general rule that an individual officer cannot be liable for acts done in his corporate capacity must also be rejected. The cases decided in the federal courts in Texas do not impose, or even discuss, such a requirement. The Fifth Circuit has specifically rejected "formalistic labels or common-law notions of the employment relationship" in the FLSA context. *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983). Instead, the court has insisted that the "analysis must focus upon the totality of the circumstances" and "adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent." *Id.*

Similarly unpersuasive is Crum and Kimbrell's argument that interpreting the FLSA to impose individual liability on corporate officers acting in their corporate capacity is "dangerous" because "there will be tens, maybe hundreds, of additional third party defendants that should be included in this lawsuit." (Docket Entry No. 39 at 4). This argument fails to recognize that the

FLSA imposes liability on an individual officer not on the basis of that title or status but because that individual has "substantial control of the terms and conditions of the [employee's] work" or "operational control," *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (quotations omitted), or "effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees," *Circle C. Invs., Inc.*, 998 F.2d at 329.

The summary judgment evidence does not establish that, as a matter of law, Crum and Kimbrell were not "employers" under the FLSA. Their declarations state only that they did not "personally employ" or "personally enter into any contracts with" the claimants and that all actions were taken in the "capacity as a representative of UPM and on behalf of UPM." The declarations do not address the criteria the cases identify to determine whether a corporate officer may be liable under the FLSA. The evidence Fluor submitted in opposition to the summary judgment motion show that there are disputed fact issues material to determining whether Crum and Kimbrell were "employers" under the FLSA. Kimbrell's deposition testimony shows that some UPM employees and consultants reported to him and Crum; Kimbrell was involved with contract negotiations with Fluor; Kimbrell discussed overtime labor issues with UPM employees; Crum and Kimbrell visited the Fluor work site; and Crum and Kimbrell signed task orders under the Fluor contract that established compensation. The extent to which Crum and Kimbrell supervised workers, set compensation, or had hiring and firing authority is unclear. The summary judgment evidence in the record does support an inference of sufficient authority for FLSA liability as an "employer." *See, e.g.*, *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 530–31 (5th Cir. 1982) (upholding liability on an individual officer who did not direct day-to-day management of the corporations because that individual had indirectly financed the corporations and his "considerable investment" gave him

13

"ultimate, if latent, authority over its affairs" and he on occasion fired, reprimanded, and supervised employees).

The motion for summary judgment filed by Crum and Kimbrell is denied.

**V.      Conclusion**

The motion for summary judgment is denied.

SIGNED on November 19, 2009, at Houston, Texas.

_____
             Lee H. Rosenthal
       United States District Judge